# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Cynthia Edwards**<br>10124 Deer Run<br>Brecksville, OH 44141<br><br>Plaintiff,<br><br>-vs.-<br><br>**Scripps Media, Inc. d/b/a WEWS-TV**<br>312 Walnut Street<br>Suite 2800<br>Cincinnati, Ohio 45202<br><br>and<br><br>**The E.W. Scripps Company**<br>312 Walnut Street<br>Suite 2800<br>Cincinnati, OH 45202<br><br>Defendants. | CASE NO.: 1:23-cv-1133<br><br>JUDGE:<br><br>**COMPLAINT FOR RELIGIOUS, DISABILITY, AND AGE DISCRIMINATION IN EMPLOYMENT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Cynthia Edwards respectfully submits this Complaint against Defendants Scripps Media, Inc. d/b/a WEWS-TV and The E.W. Scripps Company, for religious discrimination as follows:

## INTRODUCTION

1. Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Ohio Revised Code by failing to provide Plaintiff with required religious and medical accommodation, by failing to engage in an interactive process to determine and provide reasonable accommodation, and by treating younger individuals preferentially in accommodation requests.

2. This suit seeks to remedy Defendants' statutory violations and discrimination against Plaintiff who requested accommodation from Defendants' mandate that employees receive the COVID-19 vaccine.

3. Rather than comply with its obligations under Federal and State Law, Defendants threatened to terminate Plaintiff if she did not get vaccinated for COVID-19 and terminated Plaintiff for failure to do so.

4. Defendants' statutory violations, discrimination, and retaliation left Plaintiff with the false choice of receiving the COVID-19 vaccine in violation of her sincerely held religious beliefs and medical condition or losing her job.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e. Under 28 U.S.C. § 1367(a), this Court has pendent jurisdiction over Plaintiff's state law claims.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

7. Plaintiff Cynthia Edwards lives in Brecksville, Ohio and worked as a Commercial Multimedia Producer for WEWS-TV.

8. Defendant Scripps Media, Inc. is a media company headquartered at 312 Walnut Street, Suite 2800, Cincinnati, Ohio 45202. Scripps Media, Inc. does business as WEWS-TV, a local television station located at 3001 Euclid Ave., Cleveland, Ohio.

9. Defendant The E.W. Scripps Company is the parent company of Scripps Media, Inc. and is the second largest operator of American Broadcasting Company ("ABC") affiliates. For ease of reference both Scripps Media, Inc. d/b/a WEWS-TV and The E.W. Scripps Company shall be

referred to as "SCRIPPS." When referring specifically to Scripps Media, Inc. d/b/a WEWS-TV as Plaintiff's direct employer, the company shall be referred to as "WEWS".

## FACTUAL ALLEGATIONS

10. Plaintiff worked at SCRIPPS for over forty years with a hiring date of May 18, 1981. During her employment, Plaintiff worked in numerous capacities, most recently as a Multimedia Producer.

11. Plaintiff was an employee in good standing, with ongoing exemplary work reviews throughout her employment history with SCRIPPS. Even while working remotely during the 20 months prior to her termination, Plaintiff continued her strong performance and received a positive 2021 Annual Performance Review from Jim Doutt ("DOUTT"), Commercial Production Manager at WEWS and Plaintiff's direct supervisor. Plaintiff also had an excellent working rapport with her coworkers and clients.

12. During her employment at SCRIPPS, Plaintiff was diagnosed with Crohn's Disease and underwent approximately a dozen surgeries, some related to Crohn's and some to other injuries. As a result, Plaintiff was unable to lift more than 20 lbs. as directed by her surgeon.

13. Plaintiff successfully worked remotely under a company-enacted work from home ("WFH") policy for over 20 months prior to being terminated.

14. During this time period, Plaintiff typically conducted customer calls via Zoom or telephone rather than in person, digitally delivering commercial products to customers. Although SCRIPPS did not require it, Plaintiff at times requested to attend commercial shoots and always complied with health safety protocols such as wearing a mask when attending in-person events.

15. On December 22, 2021, Plaintiff viewed a listing on SCRIPPS job opening site for her job replacement. The listing detailed all of Plaintiff's prior duties but changed the title to Commercial

Photographer and required the ability to lift up to 50 lbs., something SCRIPPS knew Plaintiff was unable to do.

16. Upon information and belief, Plaintiff was the only WEWS employee fired due to SCRIPPS' Vaccination Policy whereas others were accommodated. Plaintiff was the only disabled employee and one of the oldest female employees at WEWS. SCRIPPS permitted several other younger, non-disabled employees to work at WEWS without getting vaccinated.

A. **Defendants' Vaccine Mandate**

17. On September 9, 2021, SCRIPPS announced its mandatory Covid-19 Vaccination Policy. Director of Internal Communications Kirsty Winner shared the content of an email from Adam Symson, President and Chief Executive Officer of the The E.W. Scripps Company, with company staff. This email stated that all employees must be fully vaccinated by December 1, 2021 as a condition of employment. Completed, signed and submitted exemption request forms were due to Erica Grant ("GRANT") of the Human Resources Department ("HR") no later than September 30, 2021.

18. SCRIPPS created a method for employees to request accommodation for religious or medical exemption from Defendants' vaccine. SCRIPPS' Vaccination Policy for Covid-19 stated that SCRIPPS would engage in an "interactive process to determine whether reasonable accommodation is needed" and specified accommodation requirements such as wearing personal protective equipment, regular testing, or "other requirements."

19. SCRIPPS created a method for employees to request accommodation for religious or medical exemption from Defendants' vaccine.

4

20. Although SCRIPPS permitted employees to request a religious or medical disability exemption and reasonable accommodation to the vaccine, Plaintiff's request for religious exemption was treated differently and processed in a discriminatory manner.

21. On August 8, 2022, SCRIPPS lifted its vaccine mandate but did not offer Plaintiff her job back, which was open at the time and not filled until November 2022.

**B. Plaintiff's Accommodation Requests and Defendants' Responses**

22. On September 24, 2021, Plaintiff requested that HR send her a religious exemption form. Three days later, GRANT sent Plaintiff a religious exemption form for completion and submission.

23. On September 29, 2021, Plaintiff submitted her completed religious accommodation form to SCRIPPS' Covid-19 vaccine mandate.

24. In her exemption request, Plaintiff stated that as a "dedicated Christian" it is her moral responsibility to "always do the right thing" and not go "along with a tyrannical mandate that circumscribes the rights of individuals to choose how to protect their own bodily autonomy in the name of 'supposed safety.'" Forced vaccination with any of the available Covid-19 vaccines does "not serve the common good" and violates a person's "bodily integrity" and right to make medical decisions based on religious convictions and health. Further, the use of aborted fetal cells during various stages of vaccine research and development "goes completely against" her "religious tenets and practices to do no harm to others" or to herself. Accepting a "man-made code intended to program" her body to "do something not designed by God" is against her religious values because the believer is the "temple of God" and, according to Corinthians 3:17, God will destroy any man who "destroys the temple of God."

25. On October 14, 2021, GRANT informed Plaintiff via email that her exemption request was denied. According to GRANT, the exemption Review Team determined the information Plaintiff

5

provided did not support either that Plaintiff's religious belief was sincerely held or that she could not get the vaccine. Plaintiff was told to comply with SCRIPPS' Covid-19 vaccination policy by December 1, 2021 for continued employment.

26. GRANT verbally informed Plaintiff that appeals of the denial were not permitted. GRANT failed to provide a reasonable explanation as to why Plaintiff's specific beliefs did not meet SCRIPPS' exemption requirements. Plaintiff inquired about a medical exemption. GRANT told Plaintiff it was too late for Plaintiff to submit a medical exemption request because the submission date had passed. GRANT did not attempt to discuss reasonable accommodation to the vaccine.

27. On October 22, 2021, DOUTT emailed Plaintiff a Vaccine Policy Non-Compliance Notification Letter stating that failure to be fully vaccinated by December 1, 2021 may result in corrective action. DOUTT did not attempt to discuss reasonable accommodation to the vaccine.

28. On October 25, 2021, Plaintiff submitted a Whistleblower's complaint that SCRIPPS' vaccine policy not only discriminated against her religious rights but also violated the rights of all SCRIPPS staff and could harm the company itself. Plaintiff also lodged a formal complaint with her local HR representative.

29. On November 16, 2021, Casey Graver ("GRAVER"), Senior Director, Regional HR Business Partners, met with Plaintiff on zoom and asked Plaintiff general questions regarding her religious objection specifically to the Covid-19 vaccine, her religious objections to other vaccines and medicines, and her willingness to abide by certain safety protocols if granted an exemption. Plaintiff responded that the vaccine defiles your body – which is the temple of God – and that she was not aware of what was in some of the other vaccines or of their development using aborted fetal cells. Now that Plaintiff had knowledge, she would not be taking those vaccines or medications using this type of development process in the future. Plaintiff offered to

wear a mask indoors, regularly test for Covid-19 and/or work from home as reasonable accommodations. GRAVER did not explain the basis of the Review Team's belief that Plaintiff's religious convictions were not sincerely held. This lack of explanation made it difficult for Plaintiff to provide additional clarification. GRAVER did not reveal to Plaintiff that he was a member of the Review Team during the meeting and did not attempt to discuss reasonable accommodation to the vaccine.

30. On November 23, 2021, GRAVER emailed Plaintiff that the Review Team reviewed her additional information and determined that although she "may have sincerely-held religious beliefs," the information did not support that Plaintiff was unable to receive the Covid-19 vaccine due to religious beliefs. GRAVER told Plaintiff she had to comply with the SCRIPPS Covid-19 Vaccine Policy for continued employment. GRAVER did not attempt to discuss reasonable accommodation to the vaccine.

31. On November 29, 2021, after discussing the situation with DOUTT and her local HR representative, Plaintiff emailed GRAVER additional details about her religious convictions and asked why SCRIPPS devalued her religious beliefs.

32. On December 1, 2021, GRAVER provided a generic response that Plaintiff did not meet SCRIPPS' criteria. Plaintiff responded that the vague criteria "are subjective in nature and there is no clear objective data used in this decision." Plaintiff received no response from GRAVER and asked management for reasons for the denial of her accommodation request. Management did not respond to Plaintiff's inquiry. DOUTT officially notified Plaintiff of her employment separation effective December 3, 2021. Neither GRANT, GRAVER nor DOUTT attempted to discuss reasonable accommodation to the vaccine.

33. Throughout this process, Plaintiff continued to provide SCRIPPS with additional detail and explanation concerning her religious beliefs as to why she could not get the vaccine. Plaintiff offered to test, mask, stay in office, and work from home, but SCRIPPS refused to consider her offers of reasonable accommodation and failed to engage in interactive discussion regarding her accommodation request.

34. SCRIPPS terminated Plaintiff's employment effective December 3, 2021.

35. On information and belief some younger employees were not given an exemption to the vaccine mandate yet were permitted to continue working for Defendants.

**C. EEOC Filing and Plaintiff's Right to Sue**

36. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

37. The EEOC issued Plaintiff a Notice of Right to Sue on March 8, 2023.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious Discrimination – Failure to Accommodate**

38. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

39. Plaintiff holds sincere religious beliefs that prevent her from receiving the COVID-19 vaccine.

40. Plaintiff informed Defendants of those beliefs and requested accommodation from the vaccine on religious grounds.

41. Defendants denied Plaintiff's request for religious accommodation on the Covid-19 vaccine even though Plaintiff was able to successfully work via Zoom or telephone, digitally delivering commercial products to customers over the more than 20 months prior to her termination.

42. Although Plaintiff expressed her willingness to comply with alternate measures such as working fully remote, masking or testing for covid twice weekly, Defendants failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation and instead only responded with blanket denials and generalities.

43. Defendants did not provide Plaintiff with reasonable accommodations for her religious beliefs.

44. Defendants discriminated against Plaintiff because of her religious beliefs.

45. Defendants' failure to provide religious accommodation has harmed and will continue to harm Plaintiff.

46. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination – Retaliation

47. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

48. Plaintiff engaged in protected activity when she requested religious accommodations from Defendants' Covid-19 vaccine mandate.

49. Defendants responded to Plaintiff's request for religious accommodation from the Covid-19 vaccine mandate with a blanket denial, providing only generalities that lacked any real explanation.

50. Defendants responded to Plaintiff's protected activity by giving Plaintiff the false choice between taking the Covid-19 vaccine and termination of employment.

51. Plaintiff's religious beliefs and protected activity were the causes of Defendants' adverse employment action. Defendants' disregard and disparate treatment of Plaintiff's religious

accommodation requests for exemption from the Covid-19 vaccine confirms Defendants' hostility to requests for religious accommodation. Defendants did not engage in an interactive process with Plaintiff because Defendants never intended to provide Plaintiff with accommodation to the vaccine.

52. By retaliating against Plaintiff for engaging in protected activity, Defendants violated Title VII. This violation harmed and continues to harm Plaintiff.

**COUNT III**
**Violation of R.C. § 4112.02**
**Religious Discrimination in Employment**

53. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

54. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

55. Defendants violated Ohio's Anti-Discrimination law when they terminated Plaintiff due to her religious objections to Covid-19 vaccination.

56. Defendants have reasonable alternatives available that could have been offered to accommodate Plaintiff's religious beliefs, but Defendants refused Plaintiff those accommodations.

57. Defendants discriminated against Plaintiff because of her religion.

58. Defendants' failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

**COUNT IV**
**Violation of the ADA, 42 U.S.C. § 12101, et seq.**
**Disability discrimination – Failure to Accommodate**

59. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

60. Plaintiff requested reasonable medical accommodations from Defendants' mandates due to disability.

61. Defendants refused to engage in the interactive process with Plaintiff regarding her medical accommodation requests.

62. Defendants violated the ADA when they denied Plaintiff's accommodation requests.

63. Defendants discriminated against Plaintiff because of her disabilities.

64. Defendants' failure to provide medical accommodations harmed and continues to harm Plaintiff.

65. By failing to engage in the interactive process or offer any permanent reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless, and violated the ADA.

## COUNT V
### Violation of the ADA, 42 U.S.C. § 12203
### Prohibited Retaliation and Coercion

66. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

67. The ADA prohibits retaliation and coercion for protected activities. 42 U.S.C. § 12203 states: "(a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

68. When Plaintiff objected to Defendants' refusal to allow her reasonable accommodations, and when Defendants treated Plaintiff as though she was disabled due to being unvaccinated, and when Defendants treated Plaintiff differently due to Plaintiff's medical condition, and in claiming Plaintiff's continued employment posed a risk to others, Defendants used unlawful retaliatory and/or coercive tactics against Plaintiff.

69. Defendants' decisionmakers were aware of Plaintiff's protected activity of requesting an exemption to the vaccination policy. Their later unlawful termination of Plaintiff was an act of retaliation.

70. Defendants' behavior toward Plaintiff was irrational and motivated by a desire to punish Plaintiff for complaining about discrimination.

71. Defendants' prohibited retaliation against Plaintiff is a direct and proximate cause of Plaintiff's economic and non-economic damages.

72. The conduct of Defendants was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle Plaintiff to an award of punitive damages against Defendants, to deter Defendants and others from such conduct in the future.

## COUNT VI
### Violation of R.C. § 4112.02
### Disability Discrimination in Employment

73. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

74. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on disability.

75. Defendants violated Ohio's Anti-Discrimination law when they terminated Plaintiff due to her medical condition which prevented her from following Defendants' mandates.

76. Defendants have reasonable alternatives available that could have been offered to accommodate Plaintiff's medical condition, but Defendants refused Plaintiff those accommodations.

77. Defendants discriminated against Plaintiff because of her disability.

78. Defendants' failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

## COUNT VII
### Violation of the ADEA, 29 U.S.C. § 621 et seq.
### Disparate Treatment – Age Discrimination in Employment Act

79. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

80. Under the ADEA, 29 U.S.C. § 621 et seq., it is unlawful for an employer to, inter alia, discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's age.

81. Defendants knowingly and intentionally treated Plaintiff adversely and treated younger individuals preferentially in granting accommodation requests and in ultimately terminating Plaintiff to the preference of younger individuals.

82. As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has been discharged and discriminated against with respect to her compensation, terms, conditions, or privileges of employment because of her age.

83. Defendants' actions constitute unlawful discrimination in violation of the ADEA.

## COUNT VIII
### Violation of R.C. § 4112.14
### Age Discrimination in Employment

84. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

85. Ohio Revised Code Section 4112.14 prohibits employment discrimination based on age.

86. Defendants violated Ohio's Anti-Discrimination law when they terminated Plaintiff due to her age in preference of other younger individuals.

87. Plaintiff was physically able to perform the duties of her job and otherwise meet the established requirements of her job.

88. Defendants discriminated against Plaintiff because of her age.

89. Defendants' discriminatory behavior harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (0096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

A trial by jury is demanded for all issues so triable.

                                            Respectfully Submitted,

                                            /s/ Warner Mendenhall
                                            Warner Mendenhall (0070165)